```
                   UNITED STATES DISTRICT COURT
                       DISTRICT OF VERMONT
```

```
UNITED STATES OF AMERICA     :
                             :
     v.                      :          File No. 1:07-CR-1
                             :
JEFFREY SCARBOROUGH          :
_____    :
```

### RULING ON DEFENDANT'S MOTION TO SUPPRESS ALL EVIDENCE
### (Paper 12)

I.  Introduction

Defendant Jeffrey Scarborough ("Defendant") has filed this Motion to Suppress evidence which the government seeks to admit against him.  On April 25, 2007, the Court held an evidentiary hearing on Defendant's motion.  At the hearing, the Court afforded Defendant an opportunity to file a supplemental memorandum by May 2, 2007.  No additional memorandum has been received by the Court.  For the reasons set forth below, Defendant's motion is denied.

II. Background

Based upon the record before the Court, including the testimony offered at the hearing,[1] the Court finds the following facts.  On December 21, 2005, Detective Michael W. Plusch ("Plusch") of the Bennington Police Department was introduced to

---

[1] The only testimony related to the instant motion was from Detective Michael W. Plusch, whose testimony the Court finds credible.

1

a confidential informant ("CI") who could purchase illegal drugs from a person known to the CI as "LEF." The CI was cooperating with law enforcement to receive consideration on pending state criminal charges. Plusch was assigned to be the CI's handling officer and in this role, explained to the CI what would be required of him, including the wearing of a monitoring device so that law enforcement could record conversations between the CI and third parties. To this end, on January 10, 2006, the CI and Plusch signed a document entitled "Permission To Intercept Oral Communication." (Paper 15-2). Plusch observed the CI sign this document and by its execution, the CI "voluntarily and freely" gave consent:

> to Michael Plusch or any other officer of the Vermont State Police and/or the Vermont Drug Task Force, to install a[n] electronic listening device, or any other device designed for the purpose o[f] monitoring conversation(s) and/or video on or about my person, for the purpose of conducting a criminal investigation and to record/videotape those conversations for evidentiary purposes.

Id. At no point during his cooperation did the CI withdraw this consent and throughout his cooperation, the CI was well aware of what was going on and that he was being recorded.

On April 1, 2006, the CI notified Plusch that LEF had contacted the CI to revive the idea of a proposed partnership. The entrepreneurial venture was to include, among other things, the CI's acquisition of an apartment from which LEF would sell

drugs.  LEF also offered to front the CI one to two ounces of cocaine to be delivered on April 4, 2006.

Prior to the April 4 delivery, Plusch, as required under Vermont law, obtained a "wire warrant" from a state judicial officer which authorized law enforcement to record all conversations between the CI and LEF.  (Paper 12-2).  These conversations were thereafter recorded.

On April 4, 2006, the CI and LEF debated about when and where they would meet, eventually settling on the Iron Kettle Motel (the "Motel") in Shaftsbury, Vermont.  Under law enforcement supervision and surveillance, the CI went to room #1 of the Motel and received from LEF approximately two ounces of cocaine with the understanding that the CI would pay LEF $3,200 at a later date.  Before and during the meeting, Plusch observed a red Lincoln Navigator, registered to Cynthia Scarborough, in the Motel's parking lot.

On April 11, 2006, in a recorded telephone call, the CI arranged to meet LEF at a gas station to give him the $2,600 then owed for the cocaine.[2]  Prior to meeting at the gas station, the CI identified Defendant as LEF in a photograph lineup consisting of six different photographs.  Under law enforcement surveillance, Defendant arrived at the meeting place in the same

---

[2] A separate recorded conversation revealed that the outstanding balance had been reduced to $2,600 because the CI had procured an apartment for LEF for $600.

red Lincoln Navigator that had been observed at the Motel on April 4, 2006 and the CI paid Defendant $2,600.  As Defendant drove away, officers stopped the vehicle, arrested Defendant, and found $2,600 in his possession.

III. Discussion

As grounds to suppress all evidence obtained in this case, Defendant argues: (1) the state-issued wire warrant violated the Federal Wiretap Statute, 18 U.S.C. § 2510, et seq.; and (2) the police lacked probable cause to stop the Lincoln Navigator and arrest Defendant without a warrant.

    A.    Intercepted communications

While Defendant attempts to highlight a number of technical deficiencies in the state-issued wire warrant, he fails to address the fact that the Federal Wiretap Statute allows warrantless surveillance if one of the participants in the monitored conversations consents.  See 18 U.S.C. § 2511(2)(c) ("It shall not be unlawful under this chapter for a person acting under color of law to intercept a wire, oral, or electronic communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception"); United States v. Apostolopuos, 2005 WL 2482525, *1 (S.D.N.Y. Oct. 6, 2005) (where one party to a wiretap consents to interception, "there can be no objection to the introduction of evidence obtained from the recording at

4

trial"). Consent is to be construed broadly under the Wiretap Statute. See United States v. Amen, 831 F.2d 373, 378 (2d Cir. 1987).

Here, as part of his cooperation with law enforcement, the CI "voluntarily and freely" consented to the interception of communications. (Paper 15-2). Upon consideration of this signed document, along with Plusch's testimony concerning the CI's consent, see United States v. Edmond, 718 F. Supp. 988, 993 (D.D.C. 1989) ("[t]he agents' testimony, notwithstanding its circumstantial nature, is fully adequate to establish the informants' consent to the wiretaps for purposes of § 2511(2)(c)"), the Court concludes the CI's consent was valid and extended to the communications with Defendant. As such, the conversations were properly recorded under § 2511(2)(c) and Defendant's motion to suppress on this ground is denied.[3]

    B.   Probable cause

Probable cause exists when the police reasonably believe that "an offense has been or is being committed." United States v. Cruz, 834 F.2d 47, 50 (2d Cir. 1987). In the instant case, probable cause to stop the Lincoln Navigator and arrest Defendant

---

[3] For the same reasons, to the extent a further hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978) has been requested, the Court finds it to be unnecessary. See United States v. Angevine, 281 F.3d 1130, 1132 (10th Cir. 2002) (affirming lower court's decision that "a Franks hearing was unnecessary since police did not need a search warrant").

clearly existed.  The CI initially identified LEF (whom the CI later confirmed was Defendant) as being an individual from whom the CI could purchase drugs.  The CI's veracity, reliability, and basis of knowledge were solidified when the police observed the CI purchase cocaine at the Motel while at the same time noticing a red Lincoln Navigator registered to Cynthia Scarborough in the Motel parking lot.  By April 11, 2006, when the police observed the same Lincoln Navigator arrive for the settling of the cocaine purchase, the police had more than enough reasonably trustworthy information to believe that a drug offense had been, or was being committed.  As such, the stop and arrest of Defendant was lawful and does not form the basis to suppress any evidence.

IV.  Conclusion

For the foregoing reasons, Defendant's Motion to Suppress all evidence is DENIED.

SO ORDERED.

Dated at Brattleboro, in the District of Vermont, this 30th day of May, 2007.

/s/ J. Garvan Murtha
J. Garvan Murtha
United States District Judge
